**Teresa J. WASHINGTON, Petitioner,**

v.

**DEPARTMENT OF the ARMY, Respondent.**

**Appeal No. 86–1460.**

United States Court of Appeals, Federal Circuit.

March 11, 1987.

James A. Price, Washington, D.C., argued, for petitioner.

Elizabeth Woodruff, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With her on the brief, were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Carolyn Lynch, Asst. Counsel for Litigation, U.S. Army Corps of Engineers, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, and FRIEDMAN and DAVIS, Circuit Judges.

FRIEDMAN, Circuit Judge.

The petitioner challenges a decision of the Merit Systems Protection Board (Board) sustaining her removal from her position with the United States Army Corps of Engineers (agency) for absence without leave, 30 M.S.P.R. 614 (1986). We affirm.

I

The petitioner had been employed as a secretary with the agency since 1980. In January of 1985, the petitioner learned that she was pregnant but did not notify her superior of her condition. In early March the petitioner requested five months of leave without pay but did not give any reason for such leave. The agency denied the request and informed the petitioner that leave without pay would not be approved unless she could provide acceptable documentation that the absence was medically necessary.

On March 25, the petitioner informed her supervisor, Mr. Stephan R. Fleener, that she was pregnant, and requested seven months of leave without pay (from May 1, 1985 through January 6, 1986) and thirty days of sick leave. In support of her request, she presented Mr. Fleener with a note dated March 22, 1985, from a Dr. Savarese, stating that the petitioner was pregnant and that her expected date of confinement was September 25, 1985. Dr. Savarese stated that "[b]ecause this is [the petitioner's] third pregnancy and because she has high risk of having premature infants (last delivery 2 months early, 4½ lbs), I have recommended that she stop work on 5/1/85 and return to work 1/6/86."

In a letter dated March 29, 1985, Mr. Fleener denied the sick leave requested. He explained that the petitioner had accumulated only twenty hours of sick leave, and that he was unable to advance her sick leave because he had "serious doubt" that she would return to duty after her "period of disability"—a doubt that was "fortified" by the petitioner's "instable behavior" that he had witnessed since January 1983, and about which he twice had written to the petitioner.

Mr. Fleener told the petitioner that he would "favorably consider" her request for leave without pay, provided that she furnish him with more specific medical documentation, which he itemized in detail. This included the history of the petitioner's medical condition, clinical findings from the petitioner's most recent medical examination, and an explanation whether the petitioner would suffer harm from performing her duties with the agency, with or without accommodations for her condition. The letter informed the petitioner:

> You must furnish this medical documentation prior to your period of expected absence in order to obtain approval of Leave Without Pay. I emphasize that you are responsible for obtaining this medical information from your doctor. I will not intervene or attempt to obtain it myself. If you do not comply, I will change any absence to Absent Without Leave (AWOL). AWOL charges consti-

tute reason to take disciplinary action up to removal from the Federal Service.

Mr. Fleener suggested that the petitioner take the letter to her doctor so that the doctor would understand the medical information that was necessary for approval of leave. The petitioner admits, however, that she never presented the letter to her doctor or asked him to supply the information requested by the letter.

The petitioner alleges that during the weekend prior to April 22, 1985, she began to experience abdominal pains. The petitioner did not report to work on April 22, but telephoned Mr. Fleener and advised him that she was ill and could not report. In response, Mr. Fleener requested that he be provided with documentation of her illness. On April 25, the petitioner informed Mr. Fleener that her physician had advised her not to return to work until January 1986. Mr. Fleener informed the petitioner that unless she provided adequate medical documentation she would be considered absent without leave beginning April 22, 1985.

On April 26, the petitioner delivered a second note from Dr. Savarese to Mr. Fleener's office. The note stated only that the petitioner was four-and-one-half months pregnant, that her due date was September 25, 1985, and that maternity leave should start April 22, 1985 and continue until January 5, 1986.

On May 3, Mr. Fleener telephoned the petitioner and again informed her that he needed proper medical documentation of her illness. The petitioner did not provide that information, and by letter dated June 13, 1985, Mr. Fleener informed the petitioner that because of her continuing absence without leave and her "conscious refusal to provide documentation" of her illness, he was proposing her removal.

The agency removed the petitioner, and the Board upheld that action. The presiding official of the Board noted that a request for leave without pay is a matter of administrative discretion, ruled that in view of the petitioner's failure to furnish administratively acceptable documentation of her disability, the agency did not abuse its dis-

cretion in denying her leave without pay, and upheld the penalty of removal for absence without leave as reasonable. The full Board denied review of the presiding official's decision.

## II

In reviewing a Board decision sustaining the removal of an employee, the decision must be affirmed unless we find it to be arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or not supported by substantial evidence. *See* 5 U.S.C. § 7703(c) (1982 & Supp.1985); *Hayes v. Department of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984); *Phillips v. United States Postal Serv.*, 695 F.2d 1389, 1390 (Fed.Cir.1982).

The petitioner makes two principal arguments in challenging her removal. First, she argues that the finding she was absent without leave from April 22 to June 13, 1985, cannot stand because she was incapacitated and unable to work during that period. Second, she contends that the agency erroneously considered her prior use of approved sick leave and leave without pay in selecting removal as the penalty for her absence without leave. She also argues that removal was an excessive penalty for her absence without leave.

A. *Incapacitation During Period of Absence.* The petitioner argues that because she was "totally incapacitated" from April 22 to June 13, 1985, she was improperly found to have been absent without leave for that period. The record, however, does not support her contention that she was totally disabled or show that she presented to the agency adequate medical documentation of that claim.

█ The only evidence before the agency relating to the petitioner's alleged medical incapacitation for work were two short statements from her physician that she was pregnant, that she had a high risk of a premature birth, and that she should be on maternity leave for an extended period. Although her supervisor gave the petitioner detailed information about the data he would require to grant her leave without pay and suggested that she show the letter

to her doctor, the petitioner did not show the doctor the letter or furnish the medical data. She failed to submit the necessary documentation even after her superior had told her a second time of the need to do so and warned her that failure to submit the data would result in her being considered absent without leave. This fact distinguishes the present case from *Schultz v. United States Navy*, 810 F.2d 1133 (Fed. Cir.1987), which the dissent cites, since in *Schultz* the agency did not specify the medical data the employee was required to submit in order to be placed in leave-without-out-pay status.

At no time prior to her removal did the petitioner submit to the agency material necessary to support her claim that she was incapacitated for work. In the circumstances we cannot say that the agency abused its discretion in denying the petitioner leave without pay. *See McDonough v. United States Postal Serv.*, 666 F.2d 647, 650–51 (1st Cir.1981) (removal of employee sustained where employee did not provide complete and unambiguous medical documentation that he was unable to report to work during the period that he was charged with being absent without leave).

█ The petitioner argues that the Board's decision upholding her removal for absence without leave is inconsistent with other Board decisions that have recognized that an employee who failed to work because of incapacitation cannot be treated as absent without leave. She relies primarily upon *Foster v. Department of Health and Human Servs.*, 18 M.S.P.R. 339 (MSPB 1983). There the Board held that an agency had acted improperly in placing an employee in absent-without-leave status for a period during which he was medically incapacitated for work, and mitigated the penalty of removal to a fifteen-day suspension for the employee's violation of the agency's rules governing requests for leave.

The facts in *Foster*, however, were significantly different from those in the present case, and this difference justified the Board's different treatment of the two cases. Unlike the present case, in *Foster*

the employee presented to the Board medical evidence showing that during the period he was charged with absence without leave he suffered from "a severe medical problem which became progressively worse and culminated in major intestinal surgery," and therefore had shown that he was "medically incapacitated" and unable to report to work. The Board in *Foster* also found that although the employee failed to comply with the agency's procedure for obtaining leave, the agency "was well-advised of the seriousness of the petitioner's condition." Neither situation existed in the present case.

B. *Prior Approved Leave.* In 1982, the petitioner took 30 days of advance sick leave and 490 hours of leave without pay. In 1983 and 1984, the petitioner took a combined total of 337 hours of leave without pay. The petitioner argues that since the prior leave was approved by the agency, the agency was unjustified in considering such leave in deciding to remove her.

Although an employee's prior use of approved leave may not constitute a ground for disciplinary action or a basis for increasing the penalty, "this principle need not preclude an agency, in an otherwise appropriate case, from showing that the employee is of marginal value to the agency because of his unreliable attendance." *Cade v. United States Postal Serv.*, 8 MSPB 362, 8 M.S.P.R. 717, 720–21 (1981). Moreover, in determining the appropriate penalty, the agency may consider the employee's dependability. *Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280, 305–06 (1981).

In view of the petitioner's poor leave record, the agency justifiably concluded that there was no reason to impose a lesser penalty that would have allowed it to retain the petitioner's services.

C. *Penalty.* Selection of the penalty for employee misconduct is left to the sound discretion of the agency. We will not interfere unless, in light of all the circumstances, the penalty is so severe or unreasonable as to constitute an abuse of discretion or the penalty violates a statute or regulation. *Connolly v. United States Dept. of Justice*, 766 F.2d 507, 513 (Fed.Cir. 1985).

Removal for absence without leave may be an appropriate penalty. *Davis v. Veterans Admin.*, 792 F.2d 1111, 1113 (Fed.Cir. 1986). "An essential element of employment is to be on the job when one is expected to be there," and to "permit employees to remain away from work without leave would seriously impede the function of an agency." *Id.* (citing *Rubin v. United States*, 150 Ct.Cl. 28, 38 (1960)).

In the present case, the petitioner was the only permanent secretary in her branch of the agency, and because of her extended absence, higher level employees were required to perform the administrative tasks that the petitioner was assigned to perform. Typing had to be taken to other divisions of the agency, and completion time was often delayed. The petitioner's supervisor testified that he was unable to hire a permanent replacement for the petitioner because he was concerned that the petitioner would return to work and there would be two employees occupying the same position.

In these circumstances, the agency has shown that the removal of the petitioner would promote the efficiency of the service. The Board did not err in upholding that determination.

### CONCLUSION

The decision of the Merit Systems Protection Board sustaining the petitioner's removal is affirmed.

AFFIRMED.

DAVIS, Circuit Judge, dissenting in part.

In my view the penalty of removal was far too severe for the only offense committed by petitioner, failure to comply with the agency's demand for a detailed specification of her condition. At least from March 22, 1985, when petitioner presented the first note from Dr. Savarese the agency knew that Ms. Washington was pregnant, that her expected date of confinement was late in September 1985, that she had a high

risk of premature delivery, and that the doctor recommended she stop work May 1, 1985 and return on January 6, 1986. A second note from Dr. Savarese (delivered to the agency on April 26, 1985) informed the agency that her maternity leave should start April 22, 1985; this note was apparently in response to the agency's demand that she furnish medical documentation for her statement to the agency that she began to experience abdominal pains during the weekend prior to April 22, 1985. There was no contrary evidence before the agency. I must conclude that by April 26, 1985 the agency "was well-advised of the seriousness of the petitioner's condition" (to quote *Foster v. Department of Health and Human Servs.*, 18 M.S.P.R. 339 (MSPB 1983). In *Schultz v. United States Navy*, 810 F.2d 1133 (Fed.Cir.1987), we recently held that a physician's summary certification that the employee-petitioner was "totally disabled for her present position" (and work would cause her mental and emotional harm) was enough to alert that employing agency as to that employee's condition and enough to found a grant of leave (which was denied there as here).

I agree that this agency could, if it wished and did, require further details and specifications before granting leave, but petitioner's failure to supply those details is the only misconduct she committed. For that offense—minor in this instance because the agency clearly had no need of those details to decide that she was pregnant and was at risk of premature delivery and had already begun to experience some pains—the penalty of removal is much too severe. For me this case is parallel to *Foster, supra,* in which the Merit Systems Protection Board reduced a removal (for violation of the agency's rules on requesting leave) to a suspension. Nor do I think that petitioner's prior taking of leave, all of it approved, can transform the penalty for this minor offense into the major sanction of removal. That extreme sanction was an abuse of discretion in the circumstances existing here.