NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2010-3012

CHERIE D. HAWKINS,

Petitioner,

v.

SOCIAL SECURITY ADMINISTRATION,

Respondent.

Cherie D. Hawkins, of Villa Rica, Georgia, pro se.

Daniel Rabinowitz, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director.

Appealed from:  Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2010-3012

CHERIE D. HAWKINS,

Petitioner,

v.

SOCIAL SECURITY ADMINISTRATION,

Respondent.

Petition for review of the Merit Systems Protection Board in AT-0752-09-0601-I-1.

_____

DECIDED: March 5, 2010

_____

Before LINN, PLAGER, and DYK, Circuit Judges.

PER CURIAM.

Petitioner Cherie D. Hawkins ("Hawkins") appeals a final decision of the Merit Systems Protection Board ("Board"), sustaining the decision of the Social Security Administration ("Agency") to remove her for "failure to report to work when not on authorized leave, resulting in absence without leave," ("AWOL") and "failure to follow the rules and regulations for requesting and obtaining leave" from November 1, 2007 through her termination on April 18, 2008. Hawkins v. Soc. Sec. Admin., No. AT-0752-09-0601-I-1 (M.S.P.B. Oct. 5, 2009) ("Decision"). Because the Board's decision was supported by substantial evidence and was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, we affirm.

Hawkins was employed by the Agency as a debtor contact representative ("DCR") in Birmingham, Alabama. On September 17, 2007, she was in an automobile accident and failed to return to work. Through numerous communications with her supervisor, Hawkins was notified that she was being carried in AWOL status. She requested that her status be changed to leave without pay ("LWOP") and later made a request for an accommodation to work from home; she was told to provide proof of the accident and of a continuing medical disability to have her status changed. Hawkins provided several doctors' letters and a police report of the accident, which the Agency found insufficient. On April 18, 2008, she was removed from her position. She appealed to the Board.

The Administrative Judge ("AJ") assigned to the case found that from September 17, 2007 to October 31, 2007, Hawkins provided sufficient evidence of disability for a change of status, and that it was unreasonable to carry her in AWOL status for that period. Id. at 5-9. However, for the period after November 1, 2007, the AJ found "no medical documentation to support [Hawkins's] continued absence." Id. at 9-12. The AJ found that the two documents presented by Hawkins to account for this period were ineffective to overturn the decision of the Agency, because neither made a claim that Hawkins was unable to work. Additionally, the AJ upheld the Agency's refusal of Hawkins's request to work from home, because the DCR position required a secure location, a secure computer, and the ability to quickly shift duties among the employees, which duties could not be performed from a remote location. Id. at 14-15. The AJ thus sustained carrying Hawkins in AWOL status and thereafter removing her. Id. at 17-18.

Hawkins did not seek review of the AJ's initial decision, which became the final decision of the Board.

On appeal, Hawkins argues that: 1) the Board's conclusion that the Agency properly carried Hawkins in AWOL status and later removed her was in error, 2) failing to grant her an accommodation such as working at home or transferring to a closer location was in error, 3) the witnesses who testified against her were lying, and 4) she did not receive a fair hearing because her sensitivity to light prevented her from confronting the witnesses. Hawkins timely appealed the Board's decision, and we have jurisdiction under 28 U.S.C. § 1295(a)(9).

Our review of a Board decision is limited. We will not set aside the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Hawkins bears the burden of establishing the Board's error. Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998). We address each of Hawkins's arguments in turn.

First, the Board's decision that the Agency properly carried Hawkins in AWOL status and later removed her is supported by substantial evidence. It is undisputed that Hawkins was absent from work between November 1, 2007 and April 18, 2008. The record shows that she was notified repeatedly—orally, in writing, and in person during an accommodation meeting with an Agency representative—of the need to provide medical substantiation of her continuing inability to perform her duties. Hawkins first submitted a letter by an ophthalmologist, Dr. Bene, concluding that she suffers from

glaucoma with a resulting loss in peripheral vision, which "prohibit[s] extensive driving." Dr. Bene suggested that Hawkins "may benefit from immediate medical hardship transfer to a closer location to her home," but affirmed that the loss of peripheral vision "should not hamper any of her performance at her job site." Hawkins also submitted a letter from a professor of ophthalmology and neurology, Dr. Digre, concluding that Hawkins has "severe photophobia," resulting in "extreme light sensitivity even indoors," but stating, "[w]e have a host of recommendations to try to get her to feel better and to improve her vision." Though Hawkins's inability to drive may have made her commute more difficult, neither letter questioned Hawkins's ability to perform her work once she got there. We find no basis to upset the Board's holding that Hawkins did not put forth sufficient evidence to change her status to LWOP.

Second, we find no ground to disturb the Board's denial of Hawkins's requests for accommodation to work from home or to be transferred to a closer office. Hawkins argues that the Agency's collective bargaining agreement, allowing work-at-home for "[e]mployees, who because of an illness or injury, certified by a physician, cannot readily commute to the worksite but are able to perform job duties at home," required the Agency to grant her an accommodation. Decision at 15. See also Borden v. Dep't of Justice, 59 M.S.P.R. 353, 356 (1993) (provisions of a collective bargaining agreement are enforced by the Board the same as agency regulations). Hawkins also added a claim for an accommodation under the Americans with Disabilities Act ("ADA"). However, substantial evidence supports the Board's determination that Hawkins would not be able to "perform [her] job duties at home." Decision at 15. Hawkins's job was required to be performed in a secure building, on a secure computer with access to

personal data such as individual credit card and social security numbers. The Board credited the testimony of Ralph Crimm, Hawkins's third level supervisor, that Hawkins's job could only be performed at one of the secured service centers. Hawkins argues that her sister, also employed by the Agency, was allowed an accommodation to work from home, and Hawkins could also have performed her job duties at home. However, Hawkins acknowledged to the Board that her sister had a different job function, which apparently did not require the same level of security as Hawkins's. Moreover, the work at home accommodation is permissive: "[w]ork at home by exception <u>may</u> be authorized." <u>Id.</u> at 15 (emphasis added). Finally, the agreement requires that the illness or injury be "certified by a physician." <u>Id.</u> For the reasons noted above, Hawkins has failed to meet this requirement.

Hawkins also argues on appeal that she should have been granted a transfer to a closer location. However, there is no indication that Hawkins made such a request to the Agency. Moreover, the reasons why an accommodation to work at home were denied, <u>supra</u>, are equally applicable to a transfer to a closer location, because the Birmingham site was the closest secure site to Hawkins's home.

As for her ADA argument, a request for an accommodation must include proof that the requestor suffers from a disability that "substantially limits one or more of [her] major life activities." 29 C.F.R. § 1630.2(g)(1). As discussed above, Hawkins has failed to submit sufficient evidence to establish such a disability. Additionally, we note that the Agency made a good faith effort to provide reasonable accommodations to Hawkins, holding an informal consultation session with her after several months of AWOL, about a possible accommodation. Finally, as the Board noted, our sister circuits have found

that driving oneself is not a major life activity.  E.g. Kellogg v. Energy Safety Servs., Inc., 544 F.3d 1121, 1126 (10th Cir. 2008), cert. denied, 129 S. Ct. 1916 (2009).  We find no reason to disagree in this case.  The Board's finding that Hawkins was not entitled to an ADA accommodation is supported by substantial evidence.

Third, Hawkins's challenge based on her contention that witnesses lied is not persuasive.  The credibility of witnesses is within the discretion of the Administrative Judge ("AJ").  Frey v. Dep't of Labor, 359 F.3d 1355, 1361 (Fed. Cir. 2004).  Hawkins has not provided any evidence beyond the bare assertions that the Agency witnesses are lying.  This is insufficient to overcome our deference to the Board, particularly "recogniz[ing] the reality that the conduct of a witness while testifying may fairly detract from the written word," which is all that is available on appeal.  Wright v. U.S. Postal Serv., 183 F.3d 1328, 1334 (Fed. Cir. 1999) (internal citations omitted).  While it is not clear which witnesses Hawkins contends are lying, the AJ here clearly delineated her judgment on each of the issues, and, where she relied on witness testimony, sufficiently explained why she credited it.  See Haebe v. Dep't of Justice, 288 F.3d 1288, 1301 n.30 (Fed. Cir. 2002) (internal citations omitted) (laying out requirements for the Board to assess witness credibility).  Thus, the Board's decision to credit the testimony of certain witnesses was supported by substantial evidence.

Finally, Hawkins argues that she was prevented from receiving a fair hearing because of her sensitivity to light.  It was Hawkins's responsibility to call her condition to the attention of the Board during her hearing.  McLaughlin v. Dep't of the Interior, 4 M.S.P.R. 70, 74 (1980).  It was within the discretion of the AJ to determine whether an accommodation was necessary and the extent to which such accommodations should

be granted.  See Stein-Verbit v. Dep't of Commerce, 72 M.S.P.R. 332, 344 (M.S.P.B. 1996).  Hawkins asserts that her condition made her unable to confront the witnesses, because she could not "see to perform the simple manual task of locating the well-familiar exhibit in front of me due to vertigo from traveling to the hearing and blindness from the indoor lighting."  Id.  Specifically, she argues that her condition prevented her from showing the witnesses an award for "Star of the Week," presented three weeks before her first AWOL, and the faxes, e-mails, and status updates she sent to her supervisor during her absence.

While we appreciate Hawkins's condition, we reject this argument for three reasons.  First, there is nothing in the record to indicate that Hawkins made a request for and was denied an accommodation at the hearing.  Second, it appears from her closing argument (by letter to the AJ) on August 17, 2009 that "defense attorney(s) realized [that] my photophobia disability substantially limited my activities in the hearing room," and that an accommodation was in fact made by removing the overhead lights above Hawkins.  Letter from Cherie Hawkins, petitioner, to Judge Jackson, AJ, M.S.P.B., at 1 (Aug. 17, 2009).  Her letter notes that this helped her, id., and does not argue that she was further unable to participate in the hearing.  Finally, the documents and exhibits she claims she was unable to present to the witnesses were not relevant to the issues in her case.  Hawkins presented the "Star of the Week" award to show that she did not need the remedial training she was scheduled for on the day of her car accident.  This is not relevant to any issue in this case.  The other documents are also irrelevant, because they fail to show the medical substantiation needed to have her status changed.  Because Hawkins failed to make a request for an accommodation at

the hearing, was nevertheless accommodated to an extent that she acknowledged was helpful, and failed to show prejudice by her condition, we find no basis to overturn the Board on this argument.

The Board found that her removal promoted the efficiency of the service, and that the penalty was reasonable under the circumstances of the case. Decision at 17-18. "An agency is inherently entitled to require an employee to be present during scheduled work times." See Law v. U.S. Postal Serv., 852 F.2d 1278, 1280 (Fed. Cir. 1988) (internal citations omitted). We have often upheld dismissal for far less sustained AWOL. See, e.g., Martens v. U.S. Postal Serv., No. 2009-3159 (Fed. Cir. Sept. 14, 2009) (eleven instances of AWOL over sixteen days); Law, 852 F.2d at 1279 (seven instances of tardiness, one day of emergency medical leave, nineteen days of sick leave). The Board considered all the relevant evidence as to the penalty, and its conclusion is both reasonable and supported by substantial evidence.

For the foregoing reasons, the decision of the Board is affirmed.

COSTS

No costs.